UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VERNON L. DRAWDY,

          Plaintiff,

v.                                    Case No. 3:22-cv-372-MMH-MCR

JACK L. EDGEMON, et al.,

          Defendants.

_____

**<u>ORDER</u>**

### I.    Status

Plaintiff Vernon L. Drawdy, an inmate of the Florida penal system, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1). He is currently proceeding as a pauper on an Amended Complaint (Docs. 19, 20; Amended Complaint) against the following four Defendants: Jack L. Edgemon, President of Prison Rehabilitative Industries and Diversified Enterprises, Inc. (PRIDE); Janice Jackson, former Manager of Metal Furniture for PRIDE; Greg Snyder, Maintenance/Safety Supervisor for Metal Furniture for PRIDE; and Christian Nagle, Safety Environmental Manager for PRIDE. Drawdy asserts that Defendants violated his Eighth Amendment rights.

Before the Court is Defendants' Motion to Dismiss (Doc. 31; Motion). Drawdy filed an Objection to Defendants' Motion to Dismiss Amended Complaint (Doc. 35; Response). The Motion is ripe for review.

## II.   Amended Complaint[1]

In the Amended Complaint, Drawdy alleges that while he was housed at Union Correctional Institution on April 9, 2018, he injured his left hand when operating a machine (the "Niagara Roll Former") that had been modified from its original condition. Doc. 19-1 at 5. Drawdy's "hand went into the rollers and he had NO WAY to turn the machine off" due to the modifications. Doc. 19-3 at 9. He was taken to a hospital and underwent surgery. Id. He contends that his thumb is numb and his index finger is permanently disfigured. Doc. 19-1 at 5. He states that Defendants ordered him to operate the machine knowing it was unsafe to do so. Doc. 19-3 at 8-9.

Drawdy contends that Defendant Edgemon, as the President of PRIDE, "is responsible for the day to day operations of PRIDE and is the one that creates policy, procedures[,] directives and customs of PRIDE." Id. at 4-5.

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Drawdy, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint, and may well differ from those that ultimately can be proved.

According to Drawdy, "Defendant Edgemon was aware, through Defendant Nagle, that the Metal Furniture Factory was operating unsafe equipment in order to get production out[,] and under color of state law, approved of this unsafe condition in deliberate indifference to the safety of inmate workers." Id. at 5-6.

As to Defendant Jackson, Drawdy asserts that at the time of the incident, "Ms. Jackson was the manager, and as such, set policy and customs of the day to day operations of the company." Id. at 6. He contends that "Defendant Jackson was aware that Defendant Snyder instructed" another inmate to modify the machine "to put the machine back on line to get out the production." Id. Drawdy asserts that "Defendant Jackson KNEW that the machine was unsafe and that it should have been RED TAGGED one (1) and a half month[s] before the incident which injured" Drawdy's hand "because the machine[']s engaging gears w[ere] not working properly." Id.

Regarding Defendant Snyder, Drawdy states that at the time of the incident, "Defendant Snyder was responsible to set policy and customs of the day to day operations of the company involving training inmates in the safe operations of machines and to ensure that all machines w[ere] working in a safe manner." Id. Drawdy alleges that Defendant Snyder instructed another inmate to modify the machine that injured Drawdy. Id. at 6-7. Specifically,

Defendant Snyder ordered the other inmate "to remove the control lever from the front of the machine and place it in the back of the machine where the operator had NO CONTROL turning the machine on and off from the front while he was operating the machine." Id. at 7.

Finally, as to Defendant Nagle, Drawdy contends that at the time of the incident, Defendant Nagle "was responsible to set policy and customs of the day to day operations of the company involving training inmates in the safe operations of machines and to ensure that all machines w[ere] working in a safe manner." Id. Drawdy contends that Defendant Nagle knew that Defendant Snyder had modified the machine and Nagle "approved of such modification." Id. at 7-8.

Drawdy raises one claim against Defendants under the Eighth Amendment.[2] He states that "[d]ue to the deliberate indifference of Defendants Edgemon, Jackson, Snyder, [and] Nagle to [Drawdy's] personal safety, it caused [him] to receive permanent injury to [his] left hand which is his dominant one." Id. at 9. As relief, Drawdy seeks monetary damages. See Doc. 19-1 at 5; Doc. 20 at 1.

---

[2] Drawdy cites the Fourteenth Amendment, Doc. 19-1 at 3, but he does not make any claim under the Fourteenth Amendment.

### III.    Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## IV.   Analysis

Defendants argue that Drawdy fails to state an Eighth Amendment claim against them; supervisory liability is improper; Defendants are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities for monetary damages; and Drawdy did not exhaust his administrative remedies prior to filing this case. See generally Motion. Drawdy responds by arguing that he has stated a claim because he alleges that the machine was altered which shows "a serious safety violation and a risk of harm" that "Defendants disregarded." Response at 5. Drawdy also asserts that

he did exhaust his administrative remedies prior to filing this case and he attaches his relevant grievances and the responses to each. Id. at 8-9; see Doc. 35-1 (grievances).

### a. Failure to State a Claim and Supervisory Liability

According to Defendants, Drawdy "does not specify which Defendant or Defendants he is claiming to have violated" his Eighth Amendment right to be free from cruel and unusual punishment. Motion at 6. They further contend that if Drawdy's claim is liberally construed as a deliberate indifference claim, he "fails to allege sufficient facts to support that any of the Defendants knew of a substantial risk of [Drawdy's] hand being pulled into the machine causing injury to [his] fingers." Id. Further, Defendants assert that Drawdy has not alleged a causal connection between any action or inaction of Defendants Edgemon, Jackson, and Nagle and Drawdy's alleged injury. Id. at 9-10. Finally, Defendants argue that Drawdy cannot state a claim against Edgemon based on supervisory liability. Id. at 8-10.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments.

> To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."

The first element of deliberate indifference—whether there was a substantial risk of serious harm—is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." The second element—whether the defendant was deliberately indifferent to that risk—has both a subjective and an objective component. Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference." Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act. Finally, the plaintiff must show a "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury.

Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (footnotes omitted);

see Visage v. Woodall, 798 F. App'x 406, 408 (11th Cir. 2020)[3] ("Showing a

substantial risk of serious harm requires the prisoner to provide evidence that

there was a strong likelihood of his injury occurring. The occurrence of the

prisoner's injury, alone, is not enough to show a substantial risk of serious

harm, nor is the mere possibility of injury." (internal quotations and citations

omitted)). Negligence does not rise to the level of a deliberate indifference claim

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

under § 1983. <u>See</u> <u>Melton v. Abston</u>, 841 F.3d 1207, 1220 (11th Cir. 2016); <u>see also</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) ("As we held in <u>Daniels</u>, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials.").

First, the Court finds that Drawdy has not offered facts suggesting a substantial risk of serious harm. Indeed, "the mere possibility of injury is not enough," instead he must allege facts showing "a 'strong likelihood' that his injury would occur." <u>Visage</u>, 798 F. App'x at 409 (quoting <u>Brooks</u>, 800 F.3d at 1301-02). He has not done so.

Second, even if Drawdy had alleged a substantial risk of serious harm, he fails to allege facts showing that Defendants acted with deliberate indifference. As to Defendant Snyder, Drawdy contends that Snyder instructed another inmate "to remove the control lever from the front of the machine and place it in the back of the machine where the operator had NO CONTROL turning the machine on and off from the front while he was operating the machine." Doc. 19-3 at 7. While this allegation may suggest that Snyder was negligent, it does not suggest that Snyder acted with deliberate indifference to a subjectively known risk of harm. Likewise, Drawdy's conclusory statements that Defendants Edgemon, Jackson, or Nagle knew of the modifications to the

machine are insufficient to show that they had subjective knowledge of a substantial risk of serious harm but knowingly disregarded that risk. Instead, Drawdy's allegations sound in negligence, which does not amount to a federal constitutional violation.

Additionally, "[s]upervisory officials are not vicariously liable under section 1983 for the unconstitutional acts of their subordinates." Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022); see Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Indeed, "[s]upervisory officials cannot be held vicariously liable under section 1983 for the actions of their subordinates unless the supervisor 'personally participates in the alleged unconstitutional conduct' or 'there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'" Smith v. Deal, 760 F. App'x 972, 975 (11th Cir. 2019) (quoting Cottone, 326 F.3d at 1360).

> There are three ways to establish a causal connection between a supervisor's actions and the unlawful conduct: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; 2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone, 326 F.3d at 1360 (citations and quotations omitted). "The deprivations that constitute widespread abuse sufficient to notify

> the supervising official must be obvious, flagrant,
> rampant and of continued duration, rather than
> isolated occurrences." <u>Hartley v. Parnell</u>, 193 F.3d
> 1263, 1269 (11th Cir. 1999) (quotations omitted). This
> "standard by which a supervisor is held liable in his
> individual capacity for the actions of a subordinate is
> extremely rigorous." <u>Keith v. DeKalb Cnty., Ga.</u>, 749
> F.3d 1034, 1048 (11th Cir. 2014).

<u>Dickinson v. Cochran</u>, 833 F. App'x 268, 272 (11th Cir. 2020).   Insofar as

Drawdy is attempting to hold Defendant Edgemon liable for the alleged

unconstitutional actions of others, such claim fails.

Even liberally construing Drawdy's allegations and accepting them as

true, the Court finds that he fails to state an Eighth Amendment claim against

Defendants in their individual capacities.[4] Thus, Defendants' Motion is due to

be granted to the extent it seeks dismissal based on Drawdy's failure to state

a claim.

---

[4] To the extent Drawdy sues Defendants Edgemon and Jackson in their official capacities, such claims are the equivalent of claims against PRIDE. <u>See</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772, 776 (11th Cir. 1991) (recognizing that "when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." (internal quotations and citations omitted)). But Drawdy has not alleged that a custom, policy, or practice <u>of PRIDE</u> was the "moving force" behind his injury. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 693-94 (1978). Thus, despite his assertions in his Response that PRIDE adopted a policy of having "unsafe working conditions," Response at 7-8, he fails to state a claim against these Defendants in their official capacities.

### b. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).

In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (internal quotations modified), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble v. Fla. Dep't of Health & Rehab. Serv., 779 F.2d 1509, 1513-20 (11th Cir. 1986).

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was immune from suit in his official capacity. <u>Id.</u> Thus, insofar as Drawdy seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. The Motion is due to be granted to the extent that Drawdy requests monetary damages from Defendants in their official capacities.

### c. Exhaustion

Defendants argue that Drawdy failed to exhaust his administrative remedies because Drawdy alleges "that he 'filed a formal grievance to Tallahassee which I never received an answer.'" Motion at 12 (quoting Doc. 19-1 at 7). Defendants do not attach any grievance records to the Motion. As noted above, Drawdy attaches his pertinent grievances to his Response.

Exhaustion is an affirmative defense and Defendants have the burden of proving Drawdy's failure to exhaust. <u>See</u> <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). Considering the record and the fact that Defendants solely rely on a statement Drawdy makes in his Amended Complaint, the Court finds that Defendants have not carried their burden. Therefore, the Motion is due to be denied to the extent it seeks dismissal based on Drawdy's failure to exhaust.

Accordingly, it is

**ORDERED**:

13

1.     Defendants' Motion to Dismiss (Doc. 31) is **GRANTED in part and DENIED in part** as stated herein.

2.     This case is **DISMISSED without prejudice** for Drawdy's failure to state a claim.[5]

3.     The **Clerk of Court** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of January, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

JAX-3 1/4
c:
Vernon L. Drawdy, #848638
Counsel of Record

---

[5] The Court recognizes that this dismissal is tantamount to a dismissal with prejudice because Drawdy's claims are likely barred by the four-year statute of limitations. However, the Court provided Drawdy with an opportunity to amend, and he has simply failed to state a claim against these Defendants. Further amendment would be futile; thus, dismissal is appropriate.

14